1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9              FOR THE EASTERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| GRANGE INSURANCE ASSOCIATION, a Washington Corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEHEMIAH JOEL PRICE, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | No.  1:19-cv-00258-NONE-EPG<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT ON COMPLAINT FOR DECLARATORY RELIEF<br><br>(Doc. No. 16)<br><br>**Ten Day Deadline** |

        This matter is before the court on a motion for summary judgment by plaintiff Grange

Insurance Company ("plaintiff," "Grange") on its complaint against its insured, Nehemiah Joel

Price ("Price").  (Doc. No. 16.)  Grange seeks declaratory relief to determine its duty to defend or

indemnify Price under a policy issued to him.  (*See id*.)  The court has considered the parties'

papers and finds it appropriate to rule on plaintiff's motion without oral argument.  *See* Local

Rule 230(g).  For the reasons set forth below, the court will grant plaintiff's motion for summary

judgment.

                          **BACKGROUND**

**A.    The Events**

        The allegations, viewed in the light most favorable to Price as the non-moving party, are

as follows.  On January 1, 2018, a group of dirt bike riders, travelling fast, rode onto Price's farm

                                    1

property and orchards, trespassing in doing so.  (Doc. No. 21 at 1–2.)  The group passed through and exited Price's land.  (*Id*.)  Uncertain if the riders would return to his or neighboring property, Price got on his own dirt bike[1] and rode out in the direction of the group in an effort to protect his orchards from being "torn up."  (*Id*.)  Such damage had occurred to his property approximately five times per year with some regularity, according to Price.  (*Id*. at 2.)

When Price reached the edge of a canal, which is not located on his property, he stopped and waited for the offending dirt bike riders to head back in his direction.  (Doc. No. 21 at 2.)  Upon return, the riders rode past Price without stopping.  (*Id*.)  Price then "followed the group," "drove in front of them," and "got the lead rider to stop" in order to speak with him.  (*Id*.)  After briefly stopping, the lead rider—a juvenile—"took off again."  (*Id*.)  Price could not see the other riders at that moment, but he followed the lead rider "a short distance," at which point he saw the riders stopped, "looking down into one of the canal laterals."  (*Id*.)  Price joined the riders and saw one of them, Evan Mays ("Mays"), another juvenile, had ridden into the canal, "seriously injur[ing] himself."  (*Id*.)  The canal had no water in it at the time.  (*Id*.)  Price called 9-1-1.  (*Id*.)

On October 15, 2018, Mays and his brother, also a juvenile and a witness to the accident, sued Price through their guardian ad litem.  (Doc. No. 16 at 7.)  The case was dismissed in the original venue, the San Joaquin County Superior Court, and was refiled on January 3, 2019, in the Stanislaus County Superior Court.  (*Id*.)  Price tendered his request for a defense to Grange at an unspecified time.  (Doc. No. 21 at 3.)  As part of Grange's investigation, Price gave two recorded interviews, on February 14, 2018 and March 26, 2018.  (Doc. No. 16 at 10.)  On May 3, 2018, Grange denied coverage to Price.  (*Id*.)  On February 22, 2019, plaintiff Grange filed this action seeking declaratory relief with respect to its duty to defend Price in the Mays' suit.  (Doc. No. 1.)

/////

/////

---

[1]  Plaintiff and Price dispute whether the motorized vehicle in this case was an off-road capable motorcycle or a dirt bike.  (Doc. No. 22 at Fact 3.)  That disputed fact is not material to the court's resolution of the pending motion.  The court will refer to the vehicle as a dirt bike— Price's preferred characterization—without deciding the nature of the vehicle, though Price referred to the motorized vehicle as a motorcycle several times during his deposition testimony in this action.  (Doc. No. 23-1 at 6.)

**B.     The Insurance Policy**

The policy at issue provides as follows:

> SECTION I – COVERAGES
>
> **COVERAGE H – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1.     Insurance Agreement
>
>> a.   We will pay those sums that an insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend an insured against any suit seeking those damages.
>>
>> However, we will have no duty to defend an insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply.
>
> …
>
> This insurance applies to bodily injury and property damage only if:
>
> (1)  The bodily injury or property damage is caused by an occurrence; and
>
> (2)  The bodily injury or property damage occurs during the policy period…

(Doc. No. 16 at 7–8.)

Relevant exclusions include:

> 2.     Exclusions
>
> ***
>
>> e.  Aircraft, hovercraft or Motorized Vehicles
>>
>> Bodily injury or property damage arising out of:
>>
>> (1)  Ownership of any aircraft, hovercraft or motorized vehicle by an insured; or

3

(2)  Maintenance, use, operation or loading or unloading of any aircraft, hovercraft or motorized vehicle;

\*\*\*

This exclusion does not apply to:

\*\*\*

(4)  A motorized vehicle while on an insured location;

\*\*\*

(6)  Bodily injury or property damage arising out of:

   a.  Mobile Equipment

   b.  The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of mobile equipment if it were not subject to motor vehicle licensing and registration or a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

   c.  The operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of mobile equipment.

(*Id*. at 8–9.)

Relevant definitions are:

15.  Mobile Equipment means the following, including any attached machinery or equipment:

\*\*\*

   b.  Motorized vehicles:

      (1)  Designed for use principally off public roads as implements for cultivating or harvesting; and

      (2)  Not subject to motor vehicle licensing, registration or a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

4

***

16.  Motorized vehicle means:

a.  A self-propelled land vehicle;

b.  Any machinery or equipment, trailer or semi-trailer attached to a vehicle included in a.;

c.  Any vehicle, including any attached machinery or equipment, while being towed by or carried on a vehicle included in a. or b.

(*Id*. at 9.)

The insurance policy also contains an endorsement entitled "Motorized Vehicles Used for Farming Purposes," which states as follows:

This endorsement modifies insurance provided under the following:

FARMING AND PERSONAL LIABILITY INSURANCE FORM

1.  Definition 15. Mobile Equipment, in SECTION V – DEFINITIONS is amended to include the following:

h.  Farm Vehicles while being used for farming purposes at an Insured location or while being operated over public roads between farm locations within a 15-mile radius of an insured location.

2.  The following definition is added to SECTION V – DEFINITIONS:

Farm Vehicle means any vehicle other than a farm tractor or farm implement which is exempt from motor vehicle licensing or registration requirements, which is used solely in agricultural pursuits on farms for the purpose of transporting machinery, equipment, implements, farm products, supplies, or farm labor and which is only incidentally operated on or moved along public roads for the purpose of going from one farming location to another.

(*Id*. at 9–10.)

/////

5

1

**LEGAL STANDARD**

2          Summary judgment is appropriate when the moving party "shows that there is no genuine

3    dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R.

4    Civ. P. 56(a).  The moving party "initially bears the burden of proving the absence of a genuine

5    issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

6    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Where, as here, the non-moving party bears

7    the burden of proof at trial, "the moving party need only prove that there is an absence of

8    evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,

9    477 U.S. at 325).  If the moving party meets its initial burden, it shifts to the opposing party to

10   establish that a genuine dispute over a material fact actually exists. *See Matsushita Elec. Indus.*

11   *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

12         To meet their burden, the parties may not simply rest on their pleadings.  Rather, parties

13   must cite to specific parts of the record to show whether there is a genuine dispute over a material

14   fact. *See* Fed. R. Civ. P. 56(c); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th

15   Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for

16   summary judgment.").  A fact is material if it might affect the outcome of the suit under

17   governing law, and the dispute, genuine if a reasonable jury could return a verdict for the non-

18   moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

19         Although the court takes undisputed facts as true and draws all inferences supported by

20   the evidence in favor of the non-moving party, *see Anthoine v. N. Cent. Counties Consortium*,

21   605 F.3d 740, 745 (9th Cir. 2010), the party opposing summary judgment "must do more than

22   simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

23   U.S. at 587 (citation omitted).  However, the non-moving party need not establish a material issue

24   of fact conclusively in its favor.  It is enough that "sufficient evidence supporting the claimed

25   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the

26   truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th

27   Cir. 1987) ("[A]t this [summary judgment] stage of the litigation, the judge does not weigh

28   conflicting evidence with respect to a disputed material fact.  Nor does the judge make credibility

1    determinations with respect to statements made in affidavits, answers to interrogatories,

2    admissions, or depositions.").  A factual dispute is "genuine" "if the evidence is such that a

3    reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby, Inc.*, 477 U.S. at

4    248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

5    moving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co., Ltd. v. Zenith*

6    *Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted). "Where the record taken as a

7    whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

8    issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  Likewise, "a complete failure of

9    proof concerning an essential element of the non-moving party's case necessarily renders all other

10   facts immaterial." *Celotex*, 477 U.S. at 322.

11                                                    **ANALYSIS**

12            Defendant Price advances three primary arguments in arguing that the court should deny

13   plaintiff's motion for summary judgment:  1) that Price's dirt bike was not the causal mechanism

14   for Mays' injuries because Price's dirt bike did not make contact with Mays or otherwise

15   physically cause the accident; 2) that plaintiff's denial of coverage was erroneously decided

16   because Price's "farming purpose"—to protect his orchards from damage—means his pursuit

17   should be covered even though Price left the insured property; and 3) that the terms of the

18   insurance policy are ambiguous.  (Doc. No. 21 at 5–9.)

19            As an initial matter, jurisdiction in this case is based upon diversity and California state

20   law governs the substantive issues presented.  *See Continental Ins. Co. v. Metro-Goldwyn-Mayer,*

21   *Inc.*, 107 F.3d 1344, 1346 (9th Cir. 1997).  The duty of in insurer to defend is broader than the

22   duty to indemnify.  *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993).  "The

23   determination whether the insurer owes a duty to defend usually is made in the first instance by

24   comparing the allegations of the complaint with the terms of the policy." *Waller v. Truck Ins.*

25   *Exch., Inc.*, 11 Cal. 4th 1, 19 (1995), *as modified on denial of reh'g* (Oct. 26, 1995).

26            "[T]o be entitled to a defense, the insured must prove the existence of a potential for

27   coverage, while the insurer must establish the absence of any such potential." *Barnett v.*

28   *Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 508 (2001) (internal quotation omitted).  "[T]he

7

1  insurer is not required to defend an action against the insured when the complaint in that action

2  shows on its face that the injury complained of is not only not covered by, but is excluded from

3  the policy." *Montrose Chem. Corp. v. Superior Court*, 6 Cal. 4th 287, 297 (1993).  When the

4  question of coverage can be determined as a matter of law on undisputed facts, an insurer may

5  seek adjudication that "no potential for liability exists and thus that it has no duty to defend."

6  *Id.* at 298.  The "[c]ritical question" is whether the undisputed facts "conclusively eliminate a

7  potential for liability."  *Id.* at 298–99.

8  **A.     Injury "Arising Out of the Use" of Price's Dirt Bike**

9          Price argues that, notwithstanding his pursuit of the dirt bike riders, his own dirt bike was

10  not the cause of Mays' crash under California law, since Price's dirt bike never collided with

11  Mays or otherwise physically caused the accident.  (Doc. No. 21 at 5–7.)  Indeed, Price argues his

12  dirt bike is "merely incidental" to the accident.  (*Id*. at 6.)  As a result, Price presumably contends

13  that any exclusion premised upon the dirt bike should not apply.

14          Price relies on the district court's decision in *Wincor Nixdorf Inc. v. Discover Prop. &*

15  *Cas. Ins. Co.*, No. CV 13-02772 GAF (FFMx), 2013 WL 12131718, at *1 (C.D. Cal. June 14,

16  2013), *aff'd*, 612 F. App'x 900 (9th Cir. 2015).  In that case, the district court was called upon to

17  analyze when an injury or accident "arises out of the use" of a vehicle.  (*Id*. at 5–6.)  In addressing

18  that issue, the district court in *Wincor Nixdorf* stated as follows*:*

19              [T]he California Insurance Code defines "use" "when applied to a
               motor vehicle" as meaning "only ... operating, maintaining, loading,
20              or unloading a motor vehicle."  Cal. Ins. Code § 11580.06(g).  The
               Ninth Circuit recently turned to this definition when evaluating
21              whether an injury arose out of the use of a vehicle.  *Or. Mut. Ins. Co.
               v. Nat'l Gen. Ins. Co.*, 436 Fed. Appx. 802 (9th Cir. 2011).  The Court
22              found that "[t]he vehicle's operation, movement, maintenance,
               loading, or unloading must be a substantial factor or predominating
23              cause of the claimant's injury."  *Id.* at 903.  The California Appellate
               Court recently reached a similar conclusion, holding that
24              "[s]omething involving the vehicle's operation, movement, or
               maintenance, or its loading or unloading must be a contributing
25              cause."  *State Farm Mutual Automobile Ins. Co. v. Grisham*, 18 Cal.
               Rptr. 3d 809, 811 (Cal. App. 3d Dist. 2004).  It is evident from recent
26              California case law, which "ha[s] largely opted for the predominating
               cause/substantial factor test," *id.*, that "there must be a causal
27              connection between the use and the injury beyond a 'but for' link."
               *Farmers Ins. Exch. v. Reed*, 248 Cal. Rptr. 11, 13 (Cal. App. 1st Dist.
28              1988).  Indeed, " 'use' must encompass an event that reasonably

8

1    could have been contemplated as falling within the insurance
2    policy." *Grisham*, 18 Cal. Rptr. 3d at 811.

3  *Id.* at 5.

4       In the present case, however, plaintiff Grange does not dispute Price's characterization of

5  California law on when an injury is "arising out of use" of a motor vehicle, but instead challenges

6  Price's reliance on the decision in *Wincor Nixdorf* to support his contention he was not "using"

7  his dirt bike when the accident occurred.  (Doc. No. 24 at 1–2, 3.)  In *Wincor Nixdorf*, the court

8  found that a motor vehicle was not "used" within the meaning contemplated for insurance

9  coverage of injuries when an employee exited his work vehicle at a stoplight in order to confront

10  a pedestrian in the roadway.  2013 WL 12131718, at *2, 7.  There, the employee punched the

11  pedestrian, knocking the pedestrian unconscious, then the employee dragged the pedestrian out of

12  roadway so the employee could proceed through the intersection in his vehicle.  *Id*. at *2.  In this

13  context, the court in *Wincor Nixdorf* opined:

14       While the Parties dispute whether [the pedestrian] was actually in
         the path of the Vehicle after he was knocked out, the Court finds
15       that even if he was, that would not be sufficient to implicate use of
         a covered auto.  Plaintiffs [Wincor Nixdorf] assert that "[i]n order
16       to use the Vehicle, [the employee] had to move [the pedestrian],"
         and "[a]ccordingly, there is a clear causal link between any injuries
17       [the pedestrian] sustained when he was moved [and] [the
         employee's] use of the Toyota."  This may, conceivably, be true if
18       the Court viewed [the employee's] moving of [the pedestrian's]
         body in a vacuum.  This the Court cannot do.  The facts
19       demonstrate that [the employee] exited his vehicle and knocked
         out [the pedestrian].  If [the pedestrian] was in front of the Vehicle
20       it would have been because [the employee's] intentional tortious
21       conduct put him there.
22
         Plaintiffs fail to explain how [the employee's] momentary re-entry
23       into the vehicle constitutes the predominating cause or a
         substantial factor in [the pedestrian's] injuries. . . . The car was, at
24       most, simply the transportation of a tortfeasor to a site where he
25       commits a tort after departing from the vehicle . . . .

26  *Wincor Nixdorf*, 2013 WL 12131718, at *6–7 (citations and quotations omitted) (footnote

27  omitted).  For the reasons discussed below, the decision in *Wincor Nixdorf* is clearly

28  /////

1   distinguishable from the circumstances presented here.[2]

2         The issue before the court in resolving the pending motion for summary judgment is not

3   whether Price will ultimately be found liable for Mays' injuries, but rather, whether the incident

4   forming the basis of the underlying complaint filed by Mays "arose out of" Price's "use" of his

5   dirt bike as defined in his Grange insurance policy.  The material facts as to that issue are not

6   disputed and are viewed in the light most favorable to Price.  While Price clearly agrees he

7   pursued the dirt bike riders (having used the word "pursued" or a variant as a descriptor several

8   times himself), he attempts to distance himself from the pursuit during his discussion of the law

9   noted above.  (Doc. No. 21 at 2, 3, 7, 8, 9.)  Rather, he characterizes his actions as merely "riding

10  his dirt bike on his property and in the surrounding environment," which "did nothing more than

11  serve as his MEANS OF TRANSPORTATION."  (*Id*. at 6 (emphasis original).).  Price declares

12  that "there was no 'motor vehicle' accident at all," "none of the expected incidents [ ] of a motor

13  vehicle accident," and his "dirt bike was in no sense a 'mechanism of injury'."  (*Id*.)

14        It is clear from these contentions that the definition of "use" Price would have the court

15  apply would restrict the word, at least in his case, to direct physical contact between his dirt bike

16  and Mays (or another similarly narrow reading).  Anything less, according to Price, does not

17  constitute "use" in the context of this case.  However, Price does not cite any cases that support

18  his interpretation of "use" as it appears in the policy.

19        In this regard, injury "arising out of the use" of a vehicle, in the context of automobile

20  insurance coverage, has been defined more broadly than Price suggests:

21              In the leading case interpreting the "arising out of" language of an
                automobile insurance policy, the California Supreme Court observed
22              that "California cases uniformly hold that the 'use' of an automobile
                need not amount to a 'proximate cause' of the accident for coverage
23              to follow.  [Citations.]  Some minimal causal connection between the

24  ───────────────────────────
    [2] Plaintiff also discusses the cases cited by the district court in *Wincor Nixdorf*, but that
25  discussion need not be recited given that defendant Price himself does not discuss or analogize
    those cases to this matter.  *See, e.g., Reed*, 200 Cal. App. 3d at 1232, 1234 (finding no causal
26  connection between the victim's vehicle and her injury where her husband took car keys from his
    unlicensed, drunk wife at a bar, which led to her walking home and being struck by a different
27  vehicle); *Oregon Mut. Ins. Co. v. Nat'l Gen. Ins. Co.*, 436 F. App'x 802, 803 (9th Cir. 2011)
    (finding that a "truck merely provided the situs for the injury" where person sustained a dog bite
28  after approaching a dog sitting in the bed of a truck).  (Doc. No. 24 at 3–4.)

1
2
3

> vehicle and an accident is, however, required. 'Although the vehicle
> need not be, in the legal sense, a proximate cause of the injury, the
> events giving rise to the claim must arise out of, and be related to, its
> use.' [Citation.]" ([*State Farm Mut. Auto Ins. Co. v.*] *Partridge,*
> *supra,* 10 Cal. 3d [94] at p. 100, fn. 7 [ ] [(1973)].)

4    *Am. Nat. Prop. & Cas. Co. v. Julie R.*, 76 Cal. App. 4th 134, 138 (1999).

5          Even accepting for purposes of this motion Price's contention that the accident occurred

6    while he was briefly stopped attempting to speak to the lead rider of the group of offending dirt

7    bikers, the accident still occurred during Price's "operation" of his dirt bike—both in terms of a

8    "pursuit" itself and Price's specific actions during the pursuit (overtaking the group, riding in

9    front of them and stopping the lead rider). According to the allegations of the underlying lawsuit,

10   which is subject to judicial notice, the Mays brothers were fleeing from defendant Price when the

11   accident occurred.[3] (Doc. No. 1, Ex. A at ¶ 16.) Accordingly, the injuries alleged in the

12   underlying lawsuit arose out of Price's use of his dirt bike. Price's pursuit need not be a

13   proximate cause of Mays' injuries, and the court does not decide that it was. However, Price's

14   use was *not* "nothing more than INCIDENTAL …" to the events that unfolded, as he contends.[4]

15   (Doc. No. 21 at 6.) Mays' accident could only be considered unrelated to Price's dirt bike pursuit

16   if viewed in a vacuum, which the court cannot do. *Wincor Nixdorf*, 2013 WL 12131718, at *6.

17   **B.      The Property Boundaries**

18         Price agrees that use of a "motorized vehicle" is excluded from coverage under the

19   Grange policy but argues that an exception to the exclusion applies here. (Doc. No. 21 at 7.)

20   This exception, listed under an endorsement entitled "Motorized Vehicles Used for Farming

21   Purposes," allows for coverage of a motorized vehicle under specific circumstances. (*Id.*; Doc.

22   No. 16 at 4–5.) While Price does not dispute that his dirt bike pursuit of the juvenile group

23
24   [3] Price has objected to plaintiff Grange's statement of facts, which included the following: "The
     Mays Plaintiffs alleged they feared for their safety and fled from Mr. Price …." (Doc. No. 22 at
25   Fact 4.) Price objects, stating: "This is just pretext. Price's facts and evidence will dispel the
     allegation as false with the INFERENCE that the plaintiffs could not have 'feared for their safety'
26   due to the time and distance …." (*Id.* (emphasis original).) Price's objection is overruled. The
     court is not the finder of fact in the underlying lawsuit; however, the allegations on the face of the
27   underlying complaint filed in state court are relevant to the determination of coverage.

28   [4] To the extent Price's argument invites a determination as to causation, the court of course
     makes no ultimate determination as to Price's liability.

1   ventured off of the insured location or that the accident also occurred off of the property, he

2   nonetheless argues that he is entitled to coverage under the Grange policy because what he

3   himself characterizes as his "hot pursuit" was a "CONTINUOUS TRANSACTION." (Doc. No.

4   21 at 7–8 (emphasis original).)  In essence, Price argues his "intent" in beginning the pursuit

5   followed him off the insured location and his intent involved a "farming purpose." (*Id.*)  Because

6   he contends that his intent involved a farming purpose, Price argues he should receive coverage

7   for the duration of the hot pursuit.  (*Id.*)

8        "Coverage clauses are interpreted broadly so as to afford the greatest protection to the

9   insured, while exclusion clauses are interpreted narrowly." *TBG, Inc. v. Commercial Union Ins.*

10   *Co.*, 806 F. Supp. 1444, 1446 (N.D. Cal. 1990); *Mosten Mgmt. Co. v. Zurich-Am. Ins. Grp.*, No.

11   C-89-3475 SBA, 1992 WL 685749, at *7 (N.D. Cal. June 19, 1992) ("[I]t has long been the law

12   in California that coverage clauses are broadly construed so as to afford the greatest possible

13   protection to the insured and exclusionary clauses are interpreted narrowly against the insurer.").

14   To be effective, an 'exclusionary clause must be 'conspicuous, plain and clear.'" *Gray v. Zurich*

15   *Ins. Co.*, 65 Cal. 2d 263, 273 (1966) (quoting *Steven v. Fid. & Cas. Co. of New York*, 58 Cal. 2d

16   862, 878 (1962)).  However, "[i]t must be kept in mind that an insurer is free to select the

17   character of the risk it will assume" and an insurer "has the right to limit the coverage of a policy

18   issued by it and when it has done so, the plain language of the limitation must be respected."

19   *Fresno Econ. Imp. Used Cars, Inc. v. United States Fid. & Guar. Co.*, 76 Cal. App. 3d 272, 280

20   (1977) (quoting *Continental Cas. Co. v. Phoenix Constr. Co.* 46 Cal. 2d 423, 432 (1956)).

21        Here, the Grange policy endorsement in question provides coverage for "Farm Vehicles

22   while being used *for farming purposes at an Insured location* or *while being operated over public*

23   *roads between farm locations within a 15-mile radius of an insured location*." (Doc. No. 16 at 4

24   (emphasis added).)  "Farm Vehicle," in turn, is defined as "any vehicle other than a farm tractor

25   or farm implement which is *exempt from motor vehicle licensing or registration* requirements,

26   which is *used solely in agricultural pursuits* on farms … and which is *only incidentally operated*

27   *on or moved along public roads* for the purpose of *going from one farming location to another*."

28   (*Id.* (emphasis added).)

Price's use of the dirt bike here does not meet the terms of the endorsement.  While Price argues he was using his dirt bike for a "farming purpose," he does not dispute that his pursuit both took him off the insured location and that the accident actually occurred off that property as well. (Doc. No. 21 at 7–8.)  Price likewise does not dispute that his dirt bike was licensed, "street legal," and "admittedly a Motorized vehicle" (Doc. Nos. 16-2, Ex. B at 24; 21 at 6, 7); he does not dispute that it was *not* used solely for agricultural pursuits (Doc. Nos. 16-2, Ex. B at 22; 23-1 at 7, 25); and he does not dispute that it was *not* being "incidentally operated" along public roads in order to go from one farming location to another at the time the accident occurred (Doc. No. 21 at 2, 3, 7, 8, 9).  Price's dirt bike does not meet the definition of "farm vehicle," and it was not being operated in a manner consistent with the terms of the endorsement.  This exception to the exclusion of coverage for motorized vehicles, therefore, does not apply here.

Additionally, Price has cited no authority to support his contention that a person's intent may broaden insurance coverage beyond an insured location or that a pursuit that leaves an insured location should be analyzed as a continuous transaction that negates geographic boundaries.  Indeed, Price's contentions in this regard are contrary to the plain language of the exclusion and its exception.  Accordingly, Price's contention that an exception to the exclusions under the policy applies here must be rejected.

## C.    Ambiguity of Terms

Overlapping his argument with respect to an exception to the policy's exclusions, Price contends that the terms of his policy are ambiguous, in light of the fact his policy offers coverage for farm vehicles travelling over public roads between farm locations within a 15-mile radius but "motorized vehicle" coverage otherwise ceases "one foot beyond the border of the ranch."  (Doc. No. 21 at 8–9.)  In advancing this argument Price poses the following query:

> Does motorized vehicle coverage cease one foot beyond the border of the ranch? Clearly not, because there is coverage for Price to ride his dirt bike or other motorized vehicles [ATV, 4-wheeler, go-cart, and/or tractor] when traveling from the main ranch property to other farmed locations "within 15 miles" of the principal property UNDER THE ENDORSEMENT.

(Doc. No. 21 at 9 (emphasis original).)  In this regard, Price contends:

1
2
3

> Furthermore, the following terms are vague in relation to their totality and relation to each other: farming purposes, farm vehicles, solely in agricultural pursuits in the Endorsement. Consequently, the subject insurance policy is not susceptible to having its meaning decided as a matter of law.

4   *Id.*

5   "Interpretation of a contract is a purely legal question . . .." *Gerlinger v. Amazon.Com,*

6   *Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004) (citing *Atel Financial Corp. v. Quaker Coal Co.*,

7   321 F.3d 924, 925–26 (9th Cir. 2003)).  Under California law, insurance policies are also

8   contracts that can be interpreted as a matter of law, including the resolution of any ambiguity.

9   *Westport Ins. Corp. v. N. California Relief*, 76 F. Supp. 3d 869, 878 (N.D. Cal. 2014);

10  *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003), as modified on denial of reh'g (Sept.

11  17, 2003).

12  "The fundamental rules of contract interpretation are based on the premise that the

13  interpretation of a contract must give effect to the 'mutual intention' of the parties" which should

14  be inferred solely from the written provisions of the contract if possible.  *MacKinnon*, 31 Cal. 4th

15  at 647.  "If contractual language is clear and explicit, it governs."  *ACL Techs., Inc. v. Northbrook*

16  *Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1784 (1993), *as modified* (Sept. 21, 1993)

17  (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992)).  "A contract term

18  will be considered ambiguous when it is capable of two or more constructions, both of which are

19  reasonable.  But 'courts will not strain to create an ambiguity where none exists.'"  *Westport Ins.*

20  *Corp.*, 76 F. Supp. 3d at 879 (quoting *Waller*, 11 Cal. 4th at 18–19).  "[L]anguage in a contract

21  must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be

22  ambiguous in the abstract." *Waller*, 11 Cal. 4th at 19.

23  Here, as to this point Price's argument is unpersuasive—consisting largely of bald

24  assertion and unsupported by legal authority.  Even coupling Price's two paragraphs of argument

25  here with his argument addressed above in Part B, the court sees no ambiguity in the terms of the

26  policy Price cites.  The language of the exclusion and exception is clear and explicit and therefore

27  governs.  The court "will not strain to create an ambiguity where none exists," particularly when

28  the party claiming ambiguity has not articulated any other reasonable constructions of the terms

1  that would create the alleged ambiguity.  *Westport Ins. Corp.*, 76 F. Supp. 3d at 879.  To the

2  extent Price is suggesting the terms he identified are ambiguous in the abstract when arguing they

3  "are vague in relation to their totality and relation to each other," the court finds that argument is

4  also unavailing.  *See Waller*, 11 Cal. 4th at 19.

5  **D.     Had Price Chosen Another Vehicle**

6          Embedded within Price's other arguments, he contends at least three times, albeit briefly,

7  that insurance coverage would not be in controversy had he merely chosen to pursue the offenders

8  in another of the vehicles available to him, such as his ATV.  (Doc. No. 21 at 2–3, 6, 9.)  Price

9  does not separately address this assertion or brief the issue, and because of that, the argument is

10 not properly before the court.  Plaintiff noted that the parties are not here to decide a question in

11 the abstract.  (Doc. No. 24 at 5.)  The court agrees.

12 **CONCLUSION**

13         For the reasons explained above, plaintiff Grange's motion for summary judgment, (Doc.

14 No. 16), is GRANTED.  Based on the undisputed facts, Grange does not owe a duty to defend to

15 its insured, Nehemiah Joel Price, under the terms of the insurance policy at issue.  Within ten (10)

16 days of entry of this order, plaintiff shall submit a proposed form of judgment to the court

17 consistent with this ruling.

18 IT IS SO ORDERED.

19     Dated:   __**September 8, 2020**__          _____

20                                                 UNITED STATES DISTRICT JUDGE